# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **TERRY ELLEN SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **1:23-cv-04139-LMM-LTW** |
| | ) | |
| **THE CITY OF CLARKSTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

John D. Bennett, Esq.
Anna C. Perry, Esq.
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T – 770.818.0000
F – 770.937.9960
Attorneys for the City of Clarkston, Georgia

## I.    INTRODUCTION

Plaintiff is a former Community Relations Specialist for the City of Clarkston, Georgia. Plaintiff brings this action pursuant to the Age Discrimination in Employment Act and Tile VII of the Civil Rights Act of 1964.  Plaintiff claims the City subjected her to discrimination and retaliation when she was terminated on March 5, 2021. She also claims she was terminated to deny her of her pension benefits, which would not have vested until the following year.

Plaintiff's claims are entirely without merit. The undisputed facts reveal that during Plaintiff's brief two-month tenure with the Clarkston Police Department, she demonstrated extremely poor performance, a lack of originality, defiance, and an inability or refusal to follow orders. These performance issues were documented and presented to Plaintiff on multiple occasions prior to her termination.  Thus, after progressive discipline did not result in a change in Plaintiff's performance, Plaintiff was terminated.  None of the individuals who recommended Plaintiff's termination ever made any comments about Plaintiff's race, age, or pension benefit status, Plaintiff was not replaced in her position, and she cannot point to any similarly situated comparator who was treated differently.  She also cannot show that the City's legitimate, non-discriminatory explanation for her termination (or any other alleged adverse action) was merely a pretextual coverup for intentional race or age discrimination.  Finally, several of Plaintiff's claims are either time-barred or plainly

- 1 -

beyond the scope of her EEOC Charge.  Thus, summary judgment is due.

## II.     SUMMARY OF THE UNDISPUTED FACTS[1]

## A.     The City of Clarkston and its Police Department.

The City of Clarkston, Georgia is a small municipal corporation located in DeKalb County, Georgia. (Pl. Dep. at 43:8-17.)  The City Manager is the chief executive officer of the city and is responsible for reviewing and approving termination recommendations. (Gomez Dep. at 11:6-12:3.) Christine Hudson, who was born in May of 1961 and is sixty-three years old, has served as the Chief of Police for the City since January 2012, and Harry Hess served as the Assistant Chief between 2019 and April 2022.  (Hudson Decl. ¶¶ 2-3; Hess Decl. ¶ 2).

The City maintains an Equal Employment Opportunity Policy within its Employee Handbook which prohibits discrimination on the basis of age, race, and any other protected characteristic. (Pl. Dep. at 44:10-46:1; Pl. Dep. Ex. 4 at p. 6) The Handbook also prohibits harassment of any employee on the basis of a protected characteristic. (Pl. Dep. Ex. 4 at pp. 8-10, Ch. 1-1, 1-2, and 1-3.)  A non-exhaustive list of acts and omissions which can lead to disciplinary actions are listed under "Rules of Conduct," and include failure or refusal to follow oral or written instructions and inefficiency or lack of application in the performance of duties. (Pl.

---

[1] The City incorporates by reference its Statement of Undisputed Material Facts ("SMF"). For the sake of brevity, the City provides a general overview of the undisputed facts, which are described in more detail in the SMF.

Dep. Ex. 4 at Ch. 10, 10-1.)  Pursuant to the City's pension plan, employees become vested and eligible for pension benefits upon the completion of five full years of employment.  (Pl. Dep. at 53:16-55:4; Pl. Dep. Ex. 4 at Ch. 16, 16-1).

**B.     Plaintiff's Employment History.**

      **1.     The Start of Plaintiff's Employment and Supervision by Gomez.**

Former City Manager Keith Barker offered Plaintiff the position of Special Projects Coordinator ("SPC") on January 10, 2017, and Plaintiff accepted that role at an initial salary of $50,000. (Pl. Dep. at 54:17-55:8; Pl. Dep. Ex. 5.)  Following his retirement, Barker was replaced by Robin Gomez, who served as the City Manager from January 2019 to September 2021. (Gomez Dep. at 6:6-10, 13:13-19; Pl. Dep. at 30:5-16.)  Gomez was Plaintiff's supervisor while she continued as the SPC until December 2020. (Pl. Dep. 60:22-61:22; Gomez Dep. at 13:20-22.)[2]

Plaintiff contends Mr. Gomez thought she was a white male before meeting her, but admits that was pure speculation on her part. (Pl. Dep. at 65:15-67:14.)  For his part, Gomez denied forming any opinion about Plaintiff's skin color, race, or age prior to meeting her in person. (Gomez Dep. at 72:7-10.)  During the two year period that Plaintiff was supervised by Gomez, he never made any racist or ageist comments that were directed at Plaintiff.  (Pl. Dep. 48:4-51:6, 67:18-69:24).  Gomez also never

---

[2] Mr. Gomez was 51 years old at the time of his deposition, testified that he does not hold any bias over people over the age of forty (40), that his national origin is Mexican, and that his ethnicity is Hispanic. (Gomez Dep. at 9:3-10:10.)

issued Plaintiff any disciplinary action while he was her supervisor. (Pl. Dep. at 67:9-14.) By December 2020, Plaintiff's salary had increased to $57,368.17 annually, or $2,206.47 per standard pay period. (Defnall Decl. ¶¶ 6, Ex. A).

According to Plaintiff, in Spring 2019, Mr. Gomez stated that he believed the DeKalb County Commissioners were incompetent because they are black, and that in the summer of 2019, Mr. Gomez said something about receiving poor service from a black waiter. (Pl. Dep. at 48:22-49:2, 49:22-50:1, 50:7-11; Doc. 7 at 23-24.) Plaintiff was not a Commissioner at the time and was not the waiter that Mr. Gomez was allegedly referring to. (Pl. Dep. at 50:21-51:5.) Plaintiff also contends that on unidentified occasions, when she referred to herself as an "African American," Mr. Gomez said something to the effect of, "You mean Black?" (Pl. Dep. 63:8-64:15).

Plaintiff is unable to identify any African Americans employees other than herself who were terminated by Mr. Gomez. (Pl. Dep. 70:12-14). Further, while Plaintiff alleges that Mr. Gomez made discriminatory comments about what members of the City's refugee population said about black citizens of the City, it is undisputed that Mr. Gomez was simply relating what those refugee citizens said to him and that he does not hold the same opinions. (Gomez Dep. at 22:10-16, 22:20-23:7, 23:19-23; Doc. 7 at 24). Moreover, relevant to her "retaliation" claims, Plaintiff admittedly never made a complaint of discrimination or harassment to Gomez or the City Council prior to her termination. (Pl. Dep. at 46:13-20.)

## 2.    Plaintiff's Transfer to the Police Department.

Prior to January 2021, the City's Police Department did not have much of a social media presence.  (Hess Decl. ¶ 3; Hudson Decl. ¶ 4). Around that time, Hess and Hudson discussed their belief that the Department would benefit from a greater social media presence and more community outreach, particularly in light of the civil unrest associated with the murder of George Floyd in May 2020 and related protests against police departments.  (Hess Decl. ¶ 3; Hudson Decl. ¶ 4). As a result, a new civilian position for a "Community Relations Specialist" was created for the Police Department, and on January 4, 2021, Plaintiff was transferred to this new position. (Hudson Decl. ¶¶ 4-5; Gomez Dep. 27:5-28:7; Pl. Dep. Ex. 6.)[3]

When Plaintiff was transferred, she reported directly to then Assistant Chief Harry Hess. (Hudson Decl. ¶¶ 5; Hess Decl. ¶ 4; Pl. Dep. 76:23-77:15.)  During her brief tenure with the Police Department, neither Hess nor Hudson ever made any comments, jokes, or statements about Plaintiff's race, age, or pension benefit status.

---

[3] While Plaintiff contends this was a "demotion," it was  lateral move and she actually received a raise from $57,368.17 to $59,089 annually, or to $2,272.66 per pay period (up from $2,206.47 per pay period) as reflected in her payroll records and a contemporaneous employee action form. (Pl. Dep.  at 58:1-13, 76:16-22; Pl. Ex. 6; Defnall Decl. ¶¶ 5-6; Hess Decl. ¶ 4; Hudson Decl. ¶ 5.)  In turn, while Plaintiff alleges that Hudson, Hess, and Gomez conspired to set her up to fail in this new role, each of those witnesses denies having any communications about any desire or plan to set Plaintiff up to fail, to discriminate against her because of her race or her age, to subject her to retaliation, or to terminate her before her pension benefits could vest.   (Pl. Dep. at 90:14-18; Hess Decl. ¶ 4; Hudson Decl. ¶ 5; Gomez Dep. at 28:8-20.)  Plaintiff has no evidence to support the conspiracy claim. (Pl. Dep. at 91:9-21.)

(Pl. Dep. at 83:19-21; Hess Decl. ¶ 13; Hudson Decl. ¶ 11.)

### 3.     Events Leading to Plaintiff's Termination.

Despite filling the position of Community Relations Specialist, Plaintiff seemed in the opinions of Hudson and Chief Hess to lack knowledge regarding the City and community she was working for, was often defiant and argumentative, appeared to struggle with social media technology, and was lacking in both originality and timeliness.  (Hess Decl. ¶ 5; Hudson Decl. ¶ 6).  She was issued progressive discipline as a result and was ultimately terminated for these legitimate, non-discriminatory reasons approximately two months into her tenure.

For instance, on February 4, 2021, Plaintiff was issued a one day suspension after she sent, without approval, a flyer for a "Coffee with a Cop" event to be posted on social media despite the fact that she was instructed to obtain the approval of Hess and Hudson prior to posting.  (Hudson Decl. ¶ 7, Ex. B; Hess Decl. ¶ 6, Ex. B; Pl. Dep. 79:5-81:25, 82:24-83:1). The following day, Plaintiff was issued a Disciplinary Action Recommendation by Hess, in which he addressed multiple issues, including: (1) Plaintiff's failure to timely to timely comply with a January 7, 2021 directive to create a list of all apartment complexes within the City as well as their property manager and owner, which she had not done by January 19, 2021; (2) Plaintiff's suggestion on January 9, 2021, that instead of getting her a new embroidered shirt to wear, she should just get a name tag, despite the fact that Hess had already told

- 6 -

her that the plan was to embroider shirts; (3) Plaintiff's failure, on January 21, 2021, to promptly report that the AJC had reached out to her to obtain information for a story they were working on; and (4) Plaintiff's delaying until February 2, 2021 to provide Hess with a survey they initially discussed on January 4, 2021, which Hess felt was unoriginal.  (Hess Decl. ¶ 7, Ex. C; Pl. Dep. 91:24-98:3; Pl. Dep. Ex. 8).

Next, on February 12, 2021, Hess issued a disciplinary action for Plaintiff's failure or refusal to follow oral or written instructions because she submitted a weekly report to Gomez despite specific orders not to, resulting in a two-day suspension. (Pl. Dep. Ex. 98:6-100:5, Pl. Dep. Ex. 9; Hess Decl. ¶ 8, Ex. D.)  Hess then issued written counseling to Plaintiff yet again on February 25, 2021, after he determined that she prepared a list of home-owners associations that included five properties which were not even located within the City limits – which he felt demonstrated an unfamiliarity with the City – as well as for recommending partnering with a Latino organization in connection with a domestic violence program despite the fact that the City does not have a significant Latino population. (Hess Decl. ¶ 9, Ex. E; Pl. Dep. 101:18-107:5; Pl. Dep. Ex. 10).[4]

By March 1, 2021, Hess had discussed with Chief Hudson his belief that Plaintiff was not working out and that it was his recommendation to terminate her

---

[4] None of Plaintiff's disciplinary action forms from either Hess or Hudson contain any reference to her age or race.  (Pl. Dep. 108:19-24; Pl. Dep. Ex's 8-12).

employment. (Hess Decl. ¶ 11; Hudson Decl. ¶ 12).[5] The following day, Hudson transmitted a memorandum to Gomez recommending the termination of Plaintiff and noting that since January 4, 2021 she had been suspended for a total of three days for failure to or refusal to follow instructions, had received counseling for untimeliness, lack of originality, and defiance, and further noting her belief that Plaintiff continued to demonstrate a lack of knowledge of the City limits, untimeliness, lack of originality, and incompetence. (Pl. Dep. Ex. 12; Hudson Decl. ¶ 10, Ex. D; Gomez Dep. 31:20-32:8; Pl. Dep. 120:1-121:23, Ex. 12). Gomez approved the recommendation, and Plaintiff was terminated on March 5, 2021. (Gomez Dep. at 36:14-16; Hudson Decl. at ¶ 10, Ex. D at DEF COC000109; Pl. Dep. Ex. 12.) There was no mention of Plaintiff's age or race during the termination meeting. (Pl. Dep. 124:10-125:8).

Notably, there is no record evidence that anyone was hired to replace Plaintiff in her former position, let alone a member of a different protected class. (Pl. Dep. 130:22-131:11; Hudson Decl. ¶ 12). Plaintiff also admitted that she cannot identify

---

[5] The same day, Hess transmitted a memorandum to Gomez outlining a number of Plaintiff's perceived shortcomings and performance issues, including: (1) failing to timely transmit photos for social media posting following a Coffee with a Cop event on February 27, 2021; (2) failing to follow instructions related to a project dealing with illegal parking; (3) Plaintiff's frequent request for assistance with simple tasks; (4) Plaintiff's belated handling of a proposed social media post for Black History Month; and (5) an incident on February 27, 2021 in which it took Plaintiff two hours to email Hess photos from a "Coffee with a Cop" event. (Hess Decl. ¶ 9, Ex. F; Pl. Dep. 108:24-114:12, 116:15-118:8, 118:10-119:6, Ex. 11).

anyone who was treated differently by Hess or Hudson under similar circumstances. (Pl. Dep. 140:3-14, "Q. **You don't have an [sic] comparator, do you**?" A. "**No, but neither do they**."; see also Pl. Dep. at 31:19-32:15, "**there was nobody to really compare because I was the first civilian [in the Police Department]**") (emphasis in bold).

### III.    ARGUMENT AND CITATION OF LEGAL AUTHORITY

### A.    Plaintiff Cannot Demonstrate a Genuine Issue of Material Fact.

Plaintiff asserts a variety of claims on the basis of her race, age, and alleged protected activity, including a demotion claim, a termination claim, a hostile work environment claim, and a retaliation claim.   Many of Plaintiff's claims are either time-barred or beyond the scope of her EEOC charge.   In addition, she cannot establish a prima facie case of discrimination or retaliation, and she cannot make the requisite showing of pretext with respect to the legitimate, non-discriminatory reasons articulated by City for the alleged adverse actions, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), nor can she present "a convincing mosaic of circumstantial evidence" to create a reasonable inference of discrimination. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).

### B.    Plaintiff's Complaint Goes Beyond the Scope of Her EEOC Charge and is Partially Time-Barred.

Under both Title VII and the ADEA, a plaintiff must exhaust her administrative remedies before filing a private civil action. This includes filing a

charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); see Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  A claim is only exhausted if it is within the scope of the administrative review, limited to that "which can reasonably be expected to grow out of the charge of discrimination." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) ("[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") ).  Moreover, in Georgia, a plaintiff must file a charge of discrimination within 180 days of the adverse employment action challenged in the claim. 42 U.S.C. § 2000e-5(e)(1); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003); see also Wilkerson, 270 F.3d at 1317 ("For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act.").

Plaintiff's EEOC Charge was signed on May 20, 2021, checked only the boxes for race and age discrimination, contains no reference to "retaliation" or "protected activity," and states that the discrimination occurred between January 4, 2021 and March 5, 2021.  (Pl. Dep. at 23:20-25:14, 26:13-27:25, 29:12-18; Pl. Ex. 1.)  Unlike her EEOC Charge, the Complaint filed by Plaintiff on September 14, 2023 alleges the discrimination at issue occurred from January 2019 to March 5, 2021 and includes claims for retaliation tied to her termination as well as a hostile work

environment claim based on comments allegedly made by Gomez during his prior supervision of her in 2019 and 2020. (Pl. Dep. at 29:12-18; Pl. Ex. 2.)  Notably, Plaintiff admits the events from January of 2019 to 2020 occurred more than 180 days before the EEOC Charge was filed. (Pl. Dep. at 29:19-21, 29:22-30:1; Pl. Ex.'s 1 and 2.)

In light of the foregoing, this Court must dismiss Plaintiff's retaliation claims (both under Title VII and the ADEA) given that they are plainly beyond the scope of her EEOC Charge.[6]  The same is true of any allegations that fall outside of the timeframes noted on the Charge which are clearly beyond the scope.  In turn, because the alleged "hostile work environment" comments that Plaintiff was purportedly subjected to while working for Gomez admittedly occurred more than 180 days prior to the filing of her Charge, and there is no evidence of a continuing violation, those claims must also be dismissed as untimely.  See EEOC v. Joe's Stone Crabs, Inc.,

---

[6] See, e.g., Ramon v. AT&T Broadband, 195 Fed. Appx. 860, 866 (11th Cir. 2006) (district court did not err by finding that the plaintiff did not exhaust her retaliation claim where she "did not check the retaliation box on the EEOC charge form and failed to illustrate in the charge her claim later made in the complaint that the relocation [to another department] was a result of her complaints and STD leave seeking"); Hillemann v. Univ. of Cent. Fla., 167 Fed. Appx. 747, 749-50 (11th Cir. 2006) (finding that plaintiff failed to exhaust his claims that defendant failed to hire him for three positions because of race and gender discrimination and retaliation where his "EEOC charge about the Marketing positions alleged only age discrimination under the ADEA" and "was silent about race, sex, retaliation and Title VII"); Stevens v. So. Nuclear Operating Co., 209 F.Supp.3d 1372, 1381 (S.D. Ga. 2016) (similar); Bryant v. Dougherty Cnty Sch. Sys., 1:05-CV-142 (WLS), 2021 WL 2444973, at *15 (M.D. Ga. Sept. 28, 2009) (same).

- 11 -

296 F.3d 1265, 1271 (11th Cir. 2002) (explaining that a continuing violation requires that the violation complained of actually continues until a timely date, not merely that a consequence of that violation is still present at the later date)

**C.     Plaintiff Never Engaged in Protected Activity Prior to Her Termination.**

Even if her retaliation claim were not administratively barred, it is meritless because she never engaged in protected activity prior to her termination.  In this regard, to establish a *prima facie* case of retaliation under either Title VII or the ADEA, Plaintiff must show that: (1) she "engaged in statutorily protected activity"; (2) she "suffered a materially adverse action"; and (3) "there was a causal connection between the protected activity and the adverse action." Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010).

Plaintiff's retaliation claim fails simply because she did not engage in a protected activity until after she was terminated. Under applicable law, there are two types of protected activity: (i) opposing any practice made unlawful by Title VII (commonly referred to as the "Opposition Clause"), or (ii) making a charge, testifying, assisting, or participating in a Title VII proceeding or investigation (commonly referred to as the "Participation Clause"). E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). Here, Plaintiff admittedly never made a complaint of discrimination or harassment to Gomez or the City Council prior to her termination, and her EEOC Charge was not filed until after her separation (and, even

if she filed or contacted the EEOC beforehand, there is no record evidence the City or her supervisors knew as much). (Pl. Dep. at 46:13-20.)[7]

**D.**    **Similarly, Plaintiff Has Failed to Establish an Age- or Sex-Based Hostile Work Environment or Harassment Claim.**

Even if her hostile work environment claim was otherwise timely, or to the extent it is based on her time at the Police Department, it is meritless.  To establish a claim of "hostile work environment," Plaintiff must allege and prove (1) she has been subject to unwelcome harassment; (2) the harassment was based on her protected class; (3) the harassment was so sufficiently severe or pervasive to alter the terms and conditions of her employment; and (4) there is a basis for holding the employer liable. Williams v. Motorola, Inc., 303 F.3d 1284, 1292-1293 (11th Cir. 2002).  Harassment must be both objectively and subjectively "severe or pervasive." Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir.2012) (per curiam). In determining the objective component, courts consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the employee's job performance. McCann v. Tillman, 526 F.3d 1370,

---

[7] Plaintiff's testimony also demonstrates that she does not even understand what "protected activity" in the context of a retaliation claim means.  In this regard, she testified that she was subjected to retaliation by being "racially profiled and targeted" but never testified that this was because of an opposition to an unlawful practice or for participating in any type of investigation.  (Pl. Dep. at 137:6-14.)

1378 (11th Cir. 2008). Even if offensive, "sporadic and isolated" conduct does not support a hostile work environment claim. Id. at 1379. In essence, the employee must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). Rude and uncivil comments do not meet this standard, because neither Title VII nor the ADEA is a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2283 (1998).   Under this standard, cases involving significantly greater "harassment" than the meager allegations presented here have routinely been dismissed. See McCann, 526 F.3d at 1378-79 (holding that an African American employee's allegations that a white employee called her "girl" and referred to two African American male employees "boys," and another coworker referred to a former African American employee on a single occasion as a "n***er bitch," did not amount to severe or pervasive racial harassment); Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1255 (11th Cir. 2014) (employee who heard a coworker and a supervisor say n***er in front of him, but not directed at him, could not establish a claim for hostile work environment); Webb-Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1028 (11th Cir. 2008) ("All the [] hostile work environment cases decided by the Supreme Court [have] involved patterns or allegations of

- 14 -

extensive, long lasting, unredressed and uninhibited [] threats or conduct that permeated the plaintiff's work environment.").

Here, Plaintiff has – at most – provided three statements allegedly made by Gomez regarding race and zero statements regarding age across a two-and-a-half year period. None of these statements were about or directed at Plaintiff, and it is not alleged that either Hudson or Hess ever made any racist or ageist comments towards her or anyone else. (Pl. Dep. 48:4-51:6, 67:18-69:24, 83:13-21, 119:12-19). Plaintiff's claim for harassment is thus completely without merit and must be dismissed as a matter of law.

**E.    Plaintiff's "Demotion" Claim is Also Meritless.**

Plaintiff also alleges that she was subjected to age and race discrimination on the basis that she was "demoted" when she was transferred to the Police Department. It is difficult to conceive of a more frivolous claim.

Where the adverse employment action is a demotion, a plaintiff can establish her prima facie case of discrimination by showing that "she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class." Ezell v. Wynn, 802 F.3d 1217, 1226 (11th Cir. 2015) (quoting Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 828 (11th Cir. 2000)).  As the Supreme Court recently explained, "a transferee must show some harm respecting an identifiable term or

- 15 -

condition of employment." Muldrow v. City of St. Louis, Missouri, 601 U.S. ---, 144 S.Ct. 967, 974 (Apr. 17, 2024).

As noted above, a new civilian position for a "Community Relations Specialist" was created for the Police Department out of a desire to create a better social media presence in the wake of the ongoing nationwide police protests, and on January 4, 2021, Plaintiff was transferred to this new position. (Hudson Decl. ¶¶ 4-5; Gomez Dep. 27:5-28:7; Pl. Dep. Ex. 6.) While Plaintiff contends this was a "demotion," it was lateral move and she received a raise from $57,368.17 to $59,089 annually, or to $2,272.66 per pay period (up from $2,206.47 per pay period) as reflected in her payroll records and a contemporaneous employee action form. (Pl. Dep. at 58:1-13, 76:16-22; Pl. Ex. 6; Defnall Decl. ¶¶ 5-6; Hess Decl. ¶ 4.) This, simply put, was not an adverse action, and Plaintiff's claims fail for this reason alone. But even if it was, Plaintiff has not and cannot establish that the legitimate, non-discriminatory explanation for the transfer was somehow a pretext for intentional age or race discrimination.

F.   **Summary Judgment is Due on Plaintiff's Termination-Based Race and Age Discrimination Claims.**

To establish a prima *facie case* of race discrimination under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action, and (3) the City either (a) treated similarly situated employees outside of her protected class more favorably or (b) replaced her with a

person outside of her protected class. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561–62 (11th Cir.1997). The prima facie test for age discrimination is identical, except that the last element requires proof that the Plaintiff was replaced by a substantially younger person. <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1359 (11th Cir. 1999).

**1.    Plaintiff Cannot Establish Race or Age Discrimination Under the Traditional *McDonnell Douglas* Analysis**

**i.    There Is No Direct Evidence of Discrimination.**

Direct evidence is that which, "if believed, proves [the] existence of [a] fact without inference or presumption." <u>Burrell v. Bd. of Trs. of Ga. Military Coll.</u>, 125 F.3d 1390, 1393 (11th Cir.1997). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] ... constitute direct evidence of [] discrimination." <u>Ritchie v. Indus. Steel</u>, 426 F. App'x 867, 871 (11th Cir. 2011). "For a statement to constitute direct evidence, it must be made by a person involved in the challenged decision" and related to the decision-making process itself. <u>Lewis v. Sch. Bd. Of Palm Beach Cnty.</u>, 850 F. App'x. 674, 678 (11th Cir. 2021) (citing <u>Standard v. A.B.E.L. Servs., Inc.</u>, at 1330).

Here, Plaintiff admits she never heard Chief Hudson or former Assistant Chief Hess say ***anything*** about race (or age). (Pl. Dep. at 83:19-21; Hess Decl. ¶ 13; Hudson Decl. ¶ 11.)  Plaintiff claims Mr. Gomez made statements in 2019 that mentioned race but has utterly failed to show those comments were related to or

about her, let alone that they were made in the context of the termination decision. Plainly, there is no direct evidence in this case.

### ii.    Plaintiff Was Not Replaced and Has Failed to Put Forth Evidence of a Comparator.

As noted above, a prima facie case requires establishing that the plaintiff was either replaced by someone outside of her protected class or that she was treated differently than a similarly situated comparator. Lewis v. City of Union City, 918 F.3d 1213 (11th Cir. 2019). The similarly situated comparator requirement rests on proof that the plaintiff and the purported comparator (1) "engaged in the same basic conduct (or misconduct)," (2) was "subject to the same employment policy, guideline, or rule," (3) was "under the jurisdiction of the same supervisor," and (4) "share[s] the plaintiff's employment or disciplinary history." Id. at 1227-28.

Here, there is no record evidence that anyone was hired to replace Plaintiff in her former position, let alone a member of a different protected class. (Pl. Dep. 130:22-131:11; Hudson Decl. ¶ 12). In turn, Plaintiff admitted that she cannot identify anyone who was treated differently by Hess or Hudson under similar circumstances. (Pl. Dep. 140:3-14, 31:19-32:15). As such, Plaintiff's termination-based claims (and her other claims) fail for the simple reason that she cannot establish a prima facie case of either age or race discrimination.[8]

---

[8] In addition, the fact that Chief Hudson and Mr. Gomez, who recommended termination, are both over the age of 40 – and in fact, Hudson and Plaintiff are

**G.    Defendant's Legitimate, Non-Discriminatory Explanations and Lack of Evidence of Pretext.**

Even giving Plaintiff the benefit of the doubt that she can establish a *prima facie* case of either age or race discrimination (which she cannot), the City has plainly articulated legitimate, non-discriminatory reasons for the alleged adverse actions in this case, which she cannot show to be pretext.

During her two-month tenure at the police department, it became clear to Plaintiff's superiors that she was unfamiliar with the City and lacked the skills and engagement the department needed to drive community engagement. Plaintiff lacked a sense of urgency, and commonly waited until the last minute to complete projects or waited too long to provide her work product. The work product that was provided was often lackluster, which her superiors described as either rushed or unoriginal. This type of work ethic did not align with the engagement the police department needed. Plaintiff also struggled to follow and abide by orders, which is a necessary

---

extremely close in age – further negates any reasonable inference that the termination had anything to do with the Plaintiff's age. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (no inference of pretext where decision makers were in same protected class as complainant); Moulds v. Wal-Mart Stores, Inc., 935 F.2d 252, 256 (11th Cir. 1991) (employer's failure to promote African-American plaintiff was not unlawfully discriminatory, including since another African-American manager was involved in decision-making process); Holston v. Sports Authority, Inc., 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000) (similar). See also Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996) (on summary judgment, inferences may be drawn "only if they are reasonable in view of other undisputed background or contextual facts…")

trait to effectively work in a paramilitary environment such as the police department. After weeks of progressive discipline, the department did not see an improvement in Plaintiff's behavior, as she continued to make similar mistakes. The reasons for her termination had nothing to do with her race, age, or pension, and everything to do with her apparent inability to follow direction and timely complete tasks. (Hudson Decl. ¶¶ 3-12; Hudson Decl. ¶¶ 2-10).

Thus, the Defendant has met its "exceedingly light" burden of production, and it is the Plaintiff's burden to establish pretext. Ellison v. St. Joseph's/Candler Health Sys., Inc., 775 F. App'x 634, 644 (11th Cir. 2019) (citing Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1060-61 (11th Cir. 1994)).[9]

## H.    **Plaintiff Cannot Establish Pretext.**

Pretext is a difficult standard to meet, and it is the lynchpin on which most courts in these types of cases grant summary judgment. "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." Tolley v. United Parcel Serv., 2006 WL 486523, at *5 (N.D. Ga. Feb. 27, 2006) (citation and internal marks omitted). "Thus, the inquiry is limited to whether [the City] offered an honest, nondiscriminatory explanation for terminating

---

[9]    Notably, "when an employer has offered a legitimate, nondiscriminatory reason for an [adverse employment action], whether a plaintiff made out a prima facie case is almost always irrelevant in considering a motion for summary judgment." Morrison v. City of Bainbridge, 432 F. App'x 877, 881 n. 2 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).

[Plaintiff], regardless of whether the decision might have been mistaken." Id. (citations omitted); see also Castillo v. Roche Labs., Inc., 467 F. App'x 859, 863 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted) ("That an employer's legitimate belief was mistaken is irrelevant so long as [discriminatory] animus did not motivate it."). Accordingly, to establish pretext, Plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265-66 (11th Cir. 2010) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)).[10] Below, Defendant addresses Plaintiff's anticipated pretext arguments.

### 1.    The City Manager's Purported Stray Comments.

The only allegedly discriminatory comments Plaintiff has pointed to come from Mr. Gomez. All of the purported comments occurred more than 180 days prior

---

[10] See East v. Clayton Cnty., 436 F. App'x 904, 912 (11th Cir. 2011) ("[I]f the employer acted on its honestly-held belief that the employee had engaged in misconduct, even if it was mistaken, there is no discrimination."); Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one.").

to the Charge, as noted above, and were not made in the context of the termination decision – which, again, was recommended by Hess and Hudson, not Gomez. And, even if these comments were made, they were not directed to Plaintiff or about Plaintiff. Thus, these are plainly stray comments which cannot come close to establishing pretext as to the termination decision.[11]

### 2.    Plaintiff's Attempts to Discredit the Reasons for Her Termination.

At her deposition, Plaintiff frequently claimed that her discipline by Hess and/or Hudson was somehow unfair and that the word usage in those forms – while not actually referring to race or age – were somehow "code words" for discrimination.  In essence, she disagreed that her performance was poor.

---

[11] It is true that "[a] plaintiff also can demonstrate pretext by showing that the decision maker made discriminatory remarks." Ritchie v. Indus. Steel, 426 F. App'x. 867, 872 (11th Cir. 2011). That said, "stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish a pretext." Id. at 873 (citing Rojas v. Fla., 285 F.3d 1339, 1342–43 (11th Cir. 2002)). See Ritchie, 426 F. App'x at 874 (frequent comments by decision makers that plaintiff was an "old man" could not establish pretext where no further evidence linked comments to preference for younger employees); Menefee v. Sanders Lead Co., No. 2:17-CV-262-WC, 2019 WL 9511330, at *9 (M.D. Ala. Jan. 7, 2019), aff'd, 786 F. App'x 963 (11th Cir. 2019) (plaintiff failed to establish pretext through comments about his age because he "produced no evidence showing that the decisionmakers were preoccupied with his age" or that they ever "expressed a preference for younger employees"); Mann v. Morningstar Baptist Treatment Servs., No. 2:01-cv-114, 2002 U.S. Dist. LEXIS 21873 (S.D. Ga. Oct. 1, 2002) (a few stray remarks referring to the plaintiff as an "old lady" could not support an inference that her termination was motivated by age discrimination).

But even if Plaintiff disagrees with the Chief, Assistant Chief, and Mr. Gomez's ultimate decision making – and even if their conclusions were ultimately *wrong* – that opinion is irrelevant. Rather, what matters is the Defendant's honest belief that Plaintiff struggled to follow orders in a paramilitary environment and could not timely complete the simple tasks which were assigned to her. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (emphasizing that the pretext inquiry is limited to whether an employer believed that an employee engaged in the misconduct, not whether the employee actually did); Standard, 161 F.3d at 1333 ("The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons"). As Plaintiff herself admits, she was a civilian in a paramilitary environment, and she clearly struggled to adapt to conditions which required a strict adherence to orders. (Pl. Dep. at 89:8-90:3.) Moreover, the fact that two of the decision makers in Plaintiff's termination are over the age of forty further undermines Plaintiff's claims. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996) (on summary judgment, inferences may be drawn "only if they are reasonable in view of other undisputed background or contextual facts…"). Accordingly, summary judgment is due for this additional reason.

### 3. **No Inconsistent, Contradictory, or Illogical Explanation.**

Plaintiff has also not shown that the City's explanation for her treatment

somehow shifted or changed over time, let alone that it is illogical or unsupported. Thus, the pretext standard cannot be met for this additional reason.

## I.      **Plaintiff Cannot Establish a "Convincing Mosaic" Under _Smith_.**

Plaintiff also cannot establish a "convincing mosaic" of intentional discriminatory or retaliatory evidence under Smith.   644 F.3d at 1328.   A "convincing mosaic" can be broken down into three broad categories of circumstantial evidence: "(1) suspicious timing, ambiguous statements, similar behavior directed at other members of the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of those outside the protected class; and (3) pretext in the employer's justification." Robertson v. Riverstone Communities, LLC, No. 1:17-CV-02668-CAP, 2019 WL 3282991, at *6 (N.D. Ga. July 22, 2019) (quotation marks omitted). Here, because the only evidence Plaintiff could conceivably point to in an effort to create a "mosaic" is the evidence addressed by the City above, she cannot present a mosaic, let alone a "convincing" one.  See Mitchell v. Pilgrim's Pride Corp., 817 Fed. App'x 701, 710 (11th Cir. 2020) ("[Plaintiff] failed to assemble any type of mosaic, let alone a convincing one" when based on same evidence); Vickery v. Medtronic, Inc., 2014 U.S. Dist. Lexis 12848, at *23-24 (S.D. Ala. Feb. 3, 2014) (rejecting attempt to create "mosaic" where evidence showed manager treated some employees unfavorably, but not due to their race); Conner v. Bell Microproducts-

<u>Future Tech, Inc.</u>, 492 Fed. App'x 963, 967, n. 1 (11th Cir. 2012). Thus, Plaintiff's claim fails both under the traditional <u>McDonnell Douglas</u> framework, as well as under the more difficult <u>Smith</u> standard.

## IV.    CONCLUSION

For the reasons set forth above, summary judgment is due on all of Plaintiff's claims. Defendant requests this action be dismissed in its entirety with prejudice.

Respectfully submitted this 5th day of August, 2024.

**FREEMAN MATHIS & GARY, LLP**

<u>*/s/ John D. Bennett*</u>
John D. Bennett
Georgia Bar No. 059212
Anna C. Perry
Georgia Bar No. 306362

*Counsel for Defendant*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T: 770.818.0000
F: 770.937.9960
E: jbennett@fmglaw.com
E: anna.perry@fmglaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document has been prepared using Times New Roman, 14-point font, and that this document otherwise complies with Local Rule 5.1(C).

This 5th day of August, 2024.

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Georgia Bar No. 059212
Anna C. Perry
Georgia Bar No. 306362

*Counsel for Defendant*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T: 770.818.0000
F: 770.937.9960
E: jbennett@fmglaw.com
E: anna.perry@fmglaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| TERRY ELLEN SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | **1:23-cv-04139-LMM-LTW** |
| | ) | |
| THE CITY OF CLARKSTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I certify that I have this day filed the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and that I have additionally served Plaintiff by email and mail as follows:

Terry Ellen Sanders
2220 Burr Court
Buford, GA 30518
Tsanders2830@gmail.com
*Plaintiff*

This 5th day of August, 2024.

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Georgia Bar No. 059212
Anna C. Perry
Georgia Bar No. 306362
*Counsel for Defendant*

- 27 -

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T: 770.818.0000
F: 770.937.9960
E: jbennett@fmglaw.com
E: anna.perry@fmglaw.com